## LEWIS v. DILLINGHAM.

### (Circuit Court of Appeals, Fifth Circuit. February 9, 1909.)

#### No. 1,871.

ADVERSE POSSESSION (§ 98*)—EXTENT OF POSSESSION—TEXAS STATUTE.

> Under Rev. St. Tex. 1895, arts. 3343–3349, which, as construed by the Supreme Court of the state, gives title by adverse possession to one who has been for 10 years in the continuous, peaceable and adverse possession of land under claim of right, which title, unless the claim is made under some instrument fixing the boundaries, may extend to 160 acres, including the part occupied by him, provided he proves that he claimed such tract and gives its boundaries, it was sufficient to establish the right of a defendant to the benefit of such statute as to 160 acres of a large tract that he had resided thereon continuously for 35 years, during which time he made improvements and fenced and cultivated a portion, where it was shown that he had always claimed 160 acres, which he had caused to be surveyed some 7 or 8 years before suit, and that previous to that time he had claimed by practically the same boundaries.
>
> [Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. § 542; Dec. Dig. § 98.*]

Appeal from the Circuit Court of the United States for the Southern District of Texas.

John B. Warren (Clarence C. Wightman and John Hamman, on the brief), for appellant.

Floyd McGown (Denman, Franklin & McGown, on the brief), for appellee.

Before PARDEE and SHELBY, Circuit Judges.

SHELBY, Circuit Judge. This is an appeal from a decree rendered in equity on an intervening petition. The main case was Maryland Trust Company v. Kirby Lumber Company. In that case, Charles Dillingham and F. A. Reichardt, as receivers of the Houston Oil Company of Texas, intervened by petition against George W. Lewis, alleg-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ing that, as such receivers, they were entitled to have and hold the W. C. Armstrong 1,280-acre survey, situated in Newton county, Tex., except 150 acres thereof, to which they made no claim. As to the remainder of the survey, consisting of 1,130 acres, they asserted title in the Houston Oil Company. It was alleged in the petition that yellow pine timber was growing on the land, which was the subject of a contract involved in the main case. It was also alleged that the defendant was asserting some sort of possessory title to some portion of the 1,130 acres. There was a prayer for an injunction against the defendant, enjoining him from cutting timber on the land, and for a decree quieting title.

The defendant, George W. Lewis, answered the petition, disclaiming any title or interest in, and denying that he was in possession of, any part of said 1,130 acres, except 160 acres thereof, which he described in his answer as follows:

"Survey of one hundred and sixty acres of land made for G. W. Lewis, being a part of the W. C. Armstrong survey, situated in Newton county, Texas, on the waters of Cow creek, a tributary of the Sabine river, and about ten miles S., 8 deg. W., from the town of Newton.

"Beginning at the S. W. corner of said survey from which a pine stump marked X brs. N. 80 deg. E. 8 vrs.

"Thence N. 10 deg. W. 800 vrs. second corner, a pine brs. N. 77 deg. E. 104/10 vrs., another pine brs. S. 65 deg. E. 9 vrs.

"Thence N. 80 deg. E. 1,129 vrs. third corner, a pine brs. W. 806½ vrs. a black gum brs. S. 50 deg. W. 76/10 vrs.

"Thence S. 10 deg. E. 800 vrs. to the S. boundary line of the aforesaid Armstrong survey, from which a double white oak brs. N. 59 deg. E. 58/10 vrs., a pine brs. N. 8 deg. E. 46/10 vrs.

"Thence S. 80 deg. W. 1129 vrs. with said line to the beginning."

As to this 160 acres, the answer asserted that plaintiffs ought not to have and maintain their suit, because if they ever had a right of action therefor or claim thereto, that this defendant has had and held peaceable and adverse possession thereof for more than 10 years next preceding this suit, and for more than 10 years after plaintiff's right of action accrued, if any they ever had—which is denied—and that the defendant, while so holding said 160 acres for more than 10 years, has used, cultivated, and enjoyed the same. The thing in controversy, as shown by the petition and answer, is the right and title to the 160 acres described in the defendant's plea.

The case being referred to a special master, he reported against the defendant, recommending judgment in favor of the interveners. The defendant duly excepted to the report so far as it denied the defendant's right and title to the 160 acres. The Circuit Court overruled the defendant's exceptions to the report of the special master, and confirmed the same, decreeing that the interveners recover of the defendant, George W. Lewis, the 1,130 acres of the W. C. Armstrong survey— including the 160 acres claimed by him—and quieting the title, and granting a perpetual injunction, etc. At the conclusion of the formal decree, the court added:

"The receiver is authorized and directed to make conveyance to the defendant of the land and improvements under fence, the same being estimated by the master at eleven acres."

The defendant has brought the case here by appeal, and assigns that the court erred in overruling his exceptions to the master's report, and also, in allotting to him only 11 of the 160 acres in dispute.

The record shows that the Houston Oil Company of Texas deraigns its title to the land in suit from the sovereignty of the soil, and the intervening receivers are therefore entitled to recover, unless their claim is barred by the statute of limitations of 10 years.

The following are the articles of the Revised Statutes of Texas (1895) which relate to the case:

"Art. 3343. Any person who has the right of action for the recovery of any lands, tenements or hereditaments against another having peaceable and adverse possession thereof, cultivating, using or enjoying the same, shall institute his suit therefor within ten years next after his cause of action shall have accrued, and not afterward.

"Art. 3344. The peaceable and adverse possession contemplated in the preceding article, as against the person having right of action, shall be construed to embrace not more than one hundred and sixty acres, including the improvements or the number of acres actually inclosed, should the same exceed one hundred and sixty acres; but when such possession is taken and held under some written memorandum of title, other than a deed, which fixes the boundaries of the possessor's claim and is duly registered, such peace-able possession shall be construed to be coextensive with the boundaries specified in such instrument."

"Art. 3347. Whenever in any case the action of a person for the recovery of real estate is barred by any of the provisions of this chapter, the person having such peaceable and adverse possession shall be held to have full title, precluding all claims.

"Art. 3348. 'Peaceable possession,' within the meaning of this chapter, is such as is continuous and not interrupted by adverse suit to recover the estate.

"Art. 3349. 'Adverse possession' is an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another."

Construing these statutes, in Giddings v. Fischer, 97 Tex. 184, 77 S. W. 209, the court said:

"When a party is in possession of land of which he has held adverse possession of 10 years, and claims under no muniment of title or color of title which fixes the boundaries of his claim, he may under our statute assert title to 160 acres without showing actual occupancy of the whole; provided that the tract so claimed embrace the land of which he has had actual possession, and provided, further, that he describe in his pleading the 160 acres to which he asserts title, and that he prove upon the trial that while occupying a par. he claimed the whole."

The right and title of the defendant to the 160 acres claimed by him is dependent on the sufficiency of the evidence to sustain his plea of the statute of limitations of 10 years.

The special master found that the defendant has resided on the land in controversy since 1865; that he has erected on it a house, kitchen, loghouse, smokehouse, and barn, and has inclosed about 11 acres with a fence, and has cultivated it for about 35 years. Both the master's report and the evidence show that he first settled on the land because it was a "good hunting range," and because he wished to make a home there. As found by the master, and as shown by the evidence, he stated to several persons in 1869 or 1870 and in 1886 that he claimed the land as his own—that he owned 160 acres; and that "about sev-

en or eight years ago" he caused the 160 acres in controversy to be surveyed; and that he "assessed 160 acres of the W. C. Armstrong survey for taxation from 1897 to 1906, inclusive." The fact that the defendant had himself put the improvements on the land, and had lived on it and used it as his own for more than a quarter of a century, was proved by the testimony of several witnesses. It was also shown by the defendant's own testimony that he had paid taxes on it "from 1891 to the present time," and, by the tax rolls, that he paid taxes on 160 acres of the W. C. Armstrong survey from 1896 to 1906, inclusive. The evidence, taken as a whole, shows that the possession was that of one claiming to own the land. When he moved on it, there were no improvements; he placed the improvements on it, and used the timber on it for fencing, made a clearing, and cultivated the land every year for 35 years. No one ever claimed the land of him, or in any way interfered with his possession. This all appears from the evidence of several witnesses, and from his own evidence on direct examination. He was skillfully cross-examined, and it was some statements made by him on his cross-examination that led the special master to decide against his claim. He said, in substance, that a man named Mashburn had advised him to "keep quiet" about his claim for the land.

"He told me to just keep still and not do nothing about it. Q. So you did what he told you, then, did you? You kept still about it? A. Yes, sir, I did not say nothing about it."

Referring to this part of the defendant's examination, the special master says in his report that "the defendant, upon the advice of Mashburn, lowered his flag, and did not raise it for several years thereafter." But, taking the defendant's statements as a whole, it appears that his claim to the land was continuous. He lived on it and cultivated it every year. In the same cross-examination, he testified:

"Q. While you were living there, you never made any claim to the whole W. C. Armstrong survey, did you? A. No, sir; just the amount I had run out. Q. Well, you never claimed that until the last few years, did you? A. Yes, sir, for thirty years."

By "keeping quiet" he evidently meant, not that he was not claiming the land openly and adversely, but that he did not begin any litigation about it, for he said:

"Well, I wanted to wait until they tried to dispossess me. I had done set up my claim."

It may be that the defendant was not sufficiently alert mentally to withstand, without some inconsistencies, a skillful cross-examination; but we find nothing in his statements, taken as a whole, that justifies the conclusion of the special master.

The evidence in the record clearly shows an actual entry on the land, and a holding of it by the defendant as an adverse claimant; that he actually and visibly appropriated a portion of the land by cultivating, using, and enjoying the same; that his appropriation of the land was that of one claiming to own it, and his use of it was adverse and hostile to the owner; and that this possession and condition continued for more than 10 years before the beginning of this suit.

When an adverse possessor holds land without any written title or claim describing it, he must show, to bar the action of the true owner, that he claimed certain designated land. To claim 160 acres in a survey of 1,280 acres, without in any way designating which 160 acres was claimed, would not be sufficient. The case depends on the question whether or not the defendant has sufficiently proved that he claimed*and adversely held the identical land in controversy. If the fence, instead of embracing only 11 acres, as stated by the master, or 15 acres, as stated by the defendant, had inclosed the entire 160 acres, there would have been no difficulty. Or if the survey had been made more than 10 years before the suit, instead of "7 or 8 years before," the proof of the identity of the 160 acres claimed would have been conclusive. But the evidence, taken as a whole, leaves no substantial doubt that the defendant has proved his plea. On his examination as a witness, he makes it clear that the 160 acres claimed by him were in the southwest corner of the Armstrong survey. It is not denied that the improvements made by him were on this land. Asked to describe the land by stating the lines, he said that the south line of the 160 acres claimed by him was the "dividing line between the Sims headright and the W. C. Armstrong"; that the west line of his claim was "the dividing line between the Cochran tract and W. C. Armstrong." He was unable to state clearly his north and east lines, but his answers indicate not so much a want of knowledge of these lines as an inability to express himself clearly. His statements, however, are supplemented by other witnesses. The evidence of N. B. Lewis proves that in 1872 he visited the defendant at his house on the land in question, and he describes the lines and boundaries of the land then claimed by the defendant substantially as shown by the survey subsequently made, and his testimony shows that the lines, including the north and east lines, were designated and fixed upon the ground. Without further quoting the evidence, which we have carefully examined, we hold that it is sufficient to prove that the 160 acres claimed by the defendant was that which was afterwards surveyed for him and which is the land in controversy. It includes the improvements made by him, and the house in which he has lived for more than a quarter of a century, and in which he still lives, and is sufficiently identified as the land claimed by him for a period greatly exceeding 10 years. See Davis v. Receivers of Houston Oil Co. (Tex. Civ. App.) 111 S. W. 219, and cases there cited.

The part of the decree appealed from, which allotted the defendant only 11 acres, is reversed, and the cause is remanded, with instructions to enter a decree in his favor for the 160 acres described in his plea. The interveners, appellees here, will be taxed with the costs in the Circuit Court and in this court.